UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

_____

GATEWAY, INC. and GATEWAY
COMPANIES, INC.,

                Plaintiff,                1:07cv6732 (CM)
                                                ECF Case

   vs.

ACS COMMERCIAL SOLUTIONS, INC.

                Defendant.

_____

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' STATE LAW CLAIMS
AND MOTION TO STRIKE PLAINTIFFS' JURY DEMAND**

        Kevin J. Pflug (KP-2416)
        PROSKAUER ROSE LLP
        One Newark Center
        Newark, New Jersey  07102
        Telephone:  (973) 274-3200
        Facsimile:  (973) 274-3299

        —and—

        Howard Shapiro
        Michael D. Spencer
        PROSKAUER ROSE LLP
        909 Poydras Street, Suite 1100
        New Orleans, Louisiana 70112
        Telephone:  (504) 310-4088
        Facsimile:  (504) 310-2022

        *Counsel for ACS Commercial Solutions, Inc.*

# TABLE OF CONTENTS

I. Introduction ..................................................................................................................... 1

II. Factual Summary ........................................................................................................... 1

   A. The Parties. .............................................................................................................. 1

   B. The Claims .............................................................................................................. 3

III. Law and Argument ........................................................................................................ 4

   A. Gateway's State Law Claims Must Be Dismissed Because ERISA Preempts State Causes of Action that "Relate to" an Employee Benefit Plan. .............................. 5

     1. Gateway's Negligence and Breach of Contract Claims "Relate to" an ERISA Benefit Plan ......................................................................................................... 6

     2. ACS Was A Fiduciary to the Plan with Respect to the Administration of Benefits. ............................................................................................................. 7

     3. ERISA Provides the Exclusive Remedy for the Conduct Underlying Gateway's Negligence and Breach of Contract Claims. ...................................................... 8

   B. Gateway's Demand for Jury Trial Should be Stricken ........................................ 9

IV. Conclusion .................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aetna Health Inc. v. Davila,*
   542 U.S. 200 (2004) .................................................................................................. 5

*Billinger v. Bell Atlantic,*
   240 F. Supp.2d 274 (S.D.N.Y. 2003) (McMahon, J.), *aff'd* 124 Fed. Appx.
   669 (2d Cir. 2005). ................................................................................................ 5, 9

*Kok v. First Unum Life Ins. Co.*,
   154 F. Supp.2d 777 (S.D.N.Y. 2001) (McMahon, J.) ............................................... 4

*Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*,
   102 F. 3d 660 (2d Cir. 1996) ..................................................................................... 5

*Pilot Life Ins. Co. v. Dedeaux,*
   481 U.S. 41 (1987) ..................................................................................................... 5

*Rolon v. Henneman*,
   443 F. Supp.2d 532 (S.D.N.Y. 2006) ....................................................................... 2

*Smith v. Dunham-Bush, Inc.*,
   959 F.2d 6 (2d Cir. 1992) .......................................................................................... 5

*Sullivan v. LTV Aerospace & Def. Co.*,
   82 F. 3d 1251 (2d Cir. 1996) ..................................................................................... 9

*Toussaint v. JJ Weiser & Co.*,
   2005 WL 356834 (S.D.N.Y. Feb 13, 2005) ....................................................... passim

**STATUTES**

29 U.S.C. § 1002(21)(A) .................................................................................................. 7

29 U.S.C. §§ 1001, *et seq.* ................................................................................................ 1

29 U.S.C. § 1002(1) (West 2008) .................................................................................. 1, 6

29 U.S.C. §§ 1104 and 1109 ............................................................................................ 7

29 U.S.C. § 1109(a) .......................................................................................................... 9

29 U.S.C. § 1132(a)(2) ................................................................................................. 8, 9

29 U.S.C. § 1144(a) .......................................................................................................... 5

FED. R. CIV. P. 10(c) ................................................................................................................ 2

FED. R. CIV. P. 12(b)(6) .........................................................................................................1, 2

Fed.R.Civ.P. 12(f) ...................................................................................................................1, 9

## I. INTRODUCTION

This case arises from a contractual relationship between Gateway, Inc. and Gateway Companies, Inc. (collectively "Gateway") and ACS Commercial Solutions, Inc. Gateway is the plan sponsor of the Gateway Health Plan (the "Plan"), an employee welfare benefit plan covered by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§1001, *et seq.*, providing health, dental, and vision employee benefits to Gateway employees. Complaint ("Compl."), ¶¶14, 42; 29 U.S.C. §1002(1) (West 2008). Gateway alleges ACS acts as the Plan Administrator and that ACS is an ERISA fiduciary. Compl., ¶¶16, 43. Gateway asserts an ERISA breach of fiduciary duty claim against ACS, as well as state law negligence and breach of contract claims. Compl., ¶¶35, 39, 46. The Complaint makes it clear that all of Gateway's claims relate to ACS's administration of benefits under the Plan – an ERISA covered employee welfare benefit plan. Compl., ¶¶5, 35, 39, 42, 46. ACS now moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") to dismiss Gateway's state law claims because they are preempted by ERISA. ACS also moves pursuant to Rule 12(f) of the FRCP to strike Gateway's demand for a jury trial.

## II. FACTUAL SUMMARY

### A. The Parties

The following description is based upon the allegations of the Complaint.[1] Gateway is in the business of manufacturing, distributing, and selling computers and

---

[1] Nothing herein should be construed as ACS's agreement with, or acquiescence in, any statement or allegation made in the Complaint. ACS reserves the right to challenge the completeness and accuracy of each and every allegation set forth in the operative pleadings.

1

associated electronics. Compl., ¶7. Gateway is the plan sponsor of an ERISA covered self-funded health, dental, and vision employee benefits plan, *i.e.* the Plan. Compl., ¶14. Gateway alleges it is directly responsible for the payment of healthcare costs incurred by participants and beneficiaries in the Plan. Compl., ¶15. Gateway is a fiduciary to the Plan. Compl., ¶44. Among other duties, ACS provides management services that include third-party administration of benefits such as health and dental benefits. Compl., ¶ 8. Gateway specifically alleges that ACS was an ERISA fiduciary to the Plan. Compl., ¶43.

Gateway and ACS entered into a Business Process and Information Technology Services Agreement ("Master Agreement") on September 30, 2003. *See* Compl., ¶12. The Master Agreement included a Benefits Addendum that set forth the services ACS agreed to provide to Gateway in relation to the Plan ("Benefits Contract"). Compl., ¶19; Exhs. A and B.[2] Under this Master Agreement and Benefits Contract, ACS agreed to administer the Plan. Compl., ¶16. The services contemplated by the Benefits Contract included the receipt and processing of claims for payment by Plan participants and beneficiaries ("Claims"). Compl., ¶¶19, 20. To facilitate payment of the Claims, Gateway established a bank account into which it deposited millions of dollars ("Gateway Account"). Compl., ¶22. ACS was engaged to provide these services from April 1, 2004 to December 31, 2005 (the "ACS Administration Period"). Compl., ¶18.

---

[2] In deciding a motion under FED. R. CIV. P. 12(b)(6), the Court may consider the Master Agreement and Benefits Contract referenced in the Complaint. *See, e.g.,* FED. R. CIV. P. 10(c); Compl. ¶¶12, 17-18; *Rolon v. Henneman*, 443 F. Supp.2d 532, 536 (S.D.N.Y. 2006) (McMahon, J.).

B. **The Claims**

Gateway asserts three Counts in the Complaint, all of which relate to ACS's administration of benefits under the Plan. In Count I, a state law breach of contract claim, Gateway alleges that ACS breached the Benefits Contract by failing to properly administer and regularly pay Claims. Compl., ¶35. In Count II, a state law tort claim, Gateway alleges that ACS was negligent in overpaying claims to Plan participants and beneficiaries. Compl., ¶39. Finally, in Count III, Gateway alleges that ACS breached its fiduciary duty under ERISA by failing to process participant and beneficiary claims in an appropriate manner. Compl., ¶46. Each Count of the Complaint relates to ACS's role in administering benefits provided for under the Plan. Each Count of the Complaint arises out of the same set of operative facts. Compl., ¶5.

Under the Benefits Contract, ACS was charged with certain duties related to the administration of the Plan. ACS was responsible for (1) interpreting and construing the provisions of the Plan, (2) reaching factually supported conclusions regarding claims, (3) making full and fair review of each claim that had been denied and appealed at the first level, and engaging medical personnel as appropriate, and (4) responding in writing to participants and beneficiaries, pursuant to ERISA requirements. *See* Exh. B, Benefits Addendum, p. 7. ACS was also responsible for managing overall benefits claims payments and resolving first level adjudication of Plan claims. *Id.* During the Administration Period, ACS processed claims, adjudicated disputed claims, and, at its discretion, issued payments to participants, beneficiaries, and healthcare providers from the Gateway Account ("ACS Payments"). Compl., ¶23.

Gateway engaged an outside auditor to review ACS Payments, and the auditor allegedly reviewed paid Claims for the period April 1, 2004 to May 4, 2005.  Compl., ¶¶25, 26.  Gateway alleges this audit showed that ACS had improperly processed over 13% of the Claims, resulting in "millions upon millions of dollars" in overpaid Claims from the Gateway Account.  Compl., ¶26.  These overpaid Claims allegedly were based on (1) coverage eligibility failures; (2) co-pay failures; (3) "global reimbursement" failures; (4) anesthesia billing failures; (5) documentation failures; and (6) third-party reimbursement failures.  Compl., ¶¶27(a)-(f).

Gateway alleges that the company, and Plan participants and beneficiaries were damaged as result of ACS's conduct in administering benefits under the Plan.  Compl., ¶¶36, 40, 47.  Gateway seeks damages resulting from ACS's alleged "fail[ure] to properly administer and regularly pay claims," "overpay[ment] of the Claims," and "fail[ure] to process Claims in an appropriate manner."  Compl., ¶¶35, 39, 46.  Gateway also seeks recovery of attorneys' fees and audit fees.  Compl., ¶¶28, 29.

### III.  LAW AND ARGUMENT

In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true.  *See Kok v. First Unum Life Ins. Co.*, 154 F. Supp.2d 777, 780 (S.D.N.Y. 2001) (McMahon, J.).  "In considering a motion to dismiss . . . a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference . . . [and review all allegations] in the light

4

most favorable to the non-moving party." *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,* 102 F. 3d 660, 662 (2d Cir. 1996).

### A. Gateway's State Law Claims Must Be Dismissed Because ERISA Preempts State Causes of Action that "Relate to" an Employee Benefit Plan.

Gateway's state law negligence and breach of contract claims are based on ACS's alleged conduct as an ERISA fiduciary administering the payment of benefits under the Plan. Compl., ¶¶5, 35, 39. These claims must be dismissed because they are preempted by ERISA. ERISA preempts "any and all State laws insofar as they . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a) (West 2008). A law "relates to" an employee benefit plan, "in the normal sense of the word, if it has a connection with or reference to such a plan." *Smith v. Dunham-Bush, Inc.*, 959 F.2d 6, 9 (2d Cir. 1992). Significantly, the preemption clause is not limited to state laws specifically designed to affect employee benefit plans. *See Toussaint v. JJ Weiser & Co.*, 2005 WL 356834 *1, * 12 (S.D.N.Y. Feb 13, 2005) (citing *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47-48 (1987)). State common law claims involving claims for benefits or affecting the management and administration of an ERISA-governed plan are preempted as well. *Toussaint*, 2005 WL 356834 at * 12. Consequently, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 209 (2004); *see also Smith*, 959 F.2d at 8 (holding that ERISA preempted plaintiff's breach of contract and tort claims that related to an employee benefit plan); *Billinger v. Bell Atlantic,* 240 F. Supp.2d 274, 286-87 (S.D.N.Y. 2003) (McMahon, J.), *aff'd* 124 Fed. Appx. 669 (2d Cir. 2005) (finding

5

that ERISA preempted plaintiff's state law claims of promissory estoppel and breach of contract claims that related to an ERISA-governed plan).

    1. <u>Gateway's Negligence and Breach of Contract Claims "Relate to" an ERISA Benefit Plan.</u>

As stated in the Complaint, the Plan is an ERISA welfare benefit plan. Compl., 42. It is a self-funded plan that provides health, dental, and vision benefits, and it falls squarely within the ERISA definition of an "employee welfare benefit plan." *Cf.* Compl., ¶14 to 29 U.S.C.§ 1002(1) (West 2008). Each of Gateway's claims relies upon the same set of facts directly related to ACS's administration of benefits under the Plan, as contemplated by the Master Agreement and Benefits Contract. Compl., ¶¶5, 34-47. Notably, Gateway alleges that ACS performed much more than simple ministerial services that were tangential to the administration of the Plan. Quite the contrary, Gateway alleges that ACS was essential to the administration of benefits under the Plan. Gateway also alleges that ACS was a fiduciary to the Plan. Compl., ¶43. It is in the performance of these duties that Gateway alleges ACS was negligent, in breach of contract and in breach of ACS's fiduciary duties under ERISA. Compl., ¶¶27(a)-(f), 35, 39, 46.

Specifically, Gateway alleges that ACS failed to properly make eligibility determinations, which resulted in the payment of hundreds of thousands of dollars in claims for individuals not covered by the Plan. Compl., ¶27(a). Gateway also alleges that ACS "failed to debit service provider payments for collection or application of the co-payments *specified in the Plan* to be paid by the member," which resulted in hundreds of thousands of overcharges to Gateway. Compl., ¶27(b) (emphasis added). Gateway further alleges that ACS overpaid on claims related to "global reimbursement" failures,

6

anesthesia billing, documentation failures and third-party reimbursement failures. Compl., ¶¶27(c), (d), (e), (f).

The predominate theme emanating from each of these allegations – individually and collectively – is that ACS, as a fiduciary administering the payment of benefits under the Plan, caused the overpayment of claims by failing to adhere to the terms of the Plan. It is clear that the basis of each purported cause of action is related to the administration and management of benefits under the Plan by ACS. In fact, Gateway specifically alleges in Paragraph 5 of the Complaint that all three of its "Counts . . . arose out of the same set of operative facts." Compl., ¶5. Thus, ERISA preemption has been triggered, and Gateway's state law claims must be dismissed. *See, e.g., Toussaint*, *supra*, at *13 (finding that ERISA preempted plaintiffs' state law breach of contract claims based on allegations that the defendants overcharged plaintiffs for insurance benefits provided through plan at issue).

### 2. ACS Is Alleged To Be A Fiduciary to the Plan with Respect to the Administration of Benefits.

Gateway's negligence and breach of contract claims are further preempted by ERISA because they are based on ACS's alleged conduct as an ERISA fiduciary to the Plan. *See, e.g., Toussaint*, *supra*, at *14 (stating that plaintiffs' state law claims were within ERISA's preemptive reach because the Defendants were ERISA fiduciaries). The *sine qua non* of fiduciary status is the exercise of discretion with respect to the disposition of plan assets. *See* 29 U.S.C. 1002(21)(A). To this end, Gateway specifically claims that ACS was an ERISA fiduciary to the Plan. Compl., ¶43 (stating that "ACS is a fiduciary with respect to the Gateway Health Plan as that term is used in 29 U.S.C. §§ 1104 and 1109). Gateway further alleges that ACS "adjudicated the Claims, *and at its*

7

*discretion*, issued payments to participants, beneficiaries, and healthcare providers for the Gateway Account. . . ." Compl., ¶23. Accepting these allegations as true (as this Court must do at this time), Gateway's state law claims are based on ACS's alleged conduct as an ERISA fiduciary to the Plan.

Although Gateway funded the Plan, ACS was responsible for paying the Plan's claims. Compl., ¶¶21(f), 22. Gateway alleges that ACS was negligent in "overpaying the Claims" and was in "breach of the Benefits Contract" by failing to properly administer and regularly pay claims. Compl., ¶¶35, 39. The gravamen of Gateway's state law claims is that ACS's allegedly deficient exercise of its discretion in processing and paying claims resulted in millions of dollars in overpayments from the Gateway Account – the source of funding for the Plan. *Cf.* Compl., ¶¶15, 22(a)-(f) to ¶¶26, 27(a)-(f). Gateway is now seeking, in part, to recover those funds due to ACS's alleged negligence and breach of contract. Gateway, much like the plaintiffs in *Toussaint*, has asserted its state law claims against ACS based on the services ACS provided while acting as an alleged ERISA fiduciary to the Plan. Compl., ¶¶35, 39, 43. Clearly, Gateway's state law claims are well within the reach of ERISA's preemptive ambit, and they must be dismissed.

        3.   <u>ERISA Provides the Exclusive Remedy for the Conduct Underlying Gateway's Negligence and Breach of Contract Claims.</u>

As noted above, ERISA preempts "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy . . . ." *Davila,* 542 U.S. at 209. With respect to its state law claims, Gateway is primarily seeking to recover damages related to ACS's alleged breach of its fiduciary duties in the administration of benefits under the Plan. Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), may

8

provide for civil enforcement as a result of ACS's purported breach of its fiduciary duties *See, e.g.,* 29 U.S.C. § 1132(a)(2) (West 2008) (stating that a civil action may be brought by a fiduciary for appropriate relief under Section 1109 of ERISA). Section 409 of ERISA specifically provides that a fiduciary who breaches his duties may be liable to the plan for losses resulting from his breach. 29 U.S.C. § 1109(a) (West 2008). Accordingly, ERISA provides adequate relief for Gateway's state law claims, and these claims must be dismissed because they are preempted by ERISA. *See, e.g., Toussaint, supra.*, at *15 (finding that ERISA preempted plaintiffs' state law claims because ERISA provided a remedy for the conduct upon which plaintiffs based their state law breach of fiduciary duty claims).

**B. Gateway's Demand for Jury Trial Should be Stricken**

Because ERISA preempts Gateway's state law claims and only an ERISA claim remains, Gateway's demand for jury trial should be stricken. Fed.R.Civ.P. 12(f) states, in pertinent part, that the court may strike any immaterial or impertinent matter. FED. R. CIV. P. 12(f). In the caption of the Complaint, Gateway demands a jury trial in this case. However, Second Circuit precedent is clear on the issue of jury demands in ERISA cases. ERISA's Section 502 civil enforcement provision does not authorize jury trials. *See, e.g., Billinger*, 240 F. Supp.2d at 287 n.8 (finding that plaintiff's demand for a jury trial was improper because ERISA's civil enforcement scheme does not include either an express or implied right to a jury trial); *see also Sullivan v. LTV Aerospace & Def. Co.,* 82 F. 3d 1251, 1258 (2d Cir. 1996). Because Gateway's state law claims are preempted, and the only claim properly before this Court is Gateway's ERISA breach of fiduciary duty claim, Gateway is not entitled to a jury trial on its ERISA claim.

9

## IV. Conclusion

For the reasons articulated above, ERISA preempts Gateway's state law negligence and breach of contract claims, and these claims must be dismissed. Consequently, Gateway s demand for jury trial should be stricken.

**Dated January 31, 2008**

                                        Respectfully submitted,

                                        /s/Kevin J. Pflug

                                        Kevin J. Pflug (KP-2416)
                                        PROSKAUER ROSE LLP
                                        One Newark Center
                                        Newark, New Jersey  07102
                                        Telephone:  (973) 274-3200
                                        Facsimile:  (973) 274-3299

                                                —and—

                                        Howard Shapiro
                                        Michael D. Spencer
                                        PROSKAUER ROSE LLP
                                        909 Poydras Street, Suite 1100
                                        New Orleans, Louisiana 70112
                                        Telephone:  (504) 310-4088
                                        Facsimile:  (504) 310-2022

                                        *Counsel for ACS Commercial Solutions, Inc.*